# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DUBUQUE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. CR19-1004 CJW |
| Plaintiff, ) | |
| ) | BRIEF IN SUPPORT OF |
| ) | MOTIOM TO QUASH |
| vs. ) | SEARCH WARRANTS AND |
| ) | SUPPRESS EVIDENCE |
| BRANDON SEYS. ) | |
| ) | |
| Defendant. | |

## STATEMENT OF FACTS

On or about November 30, 2018, a County of Dubuque, Iowa, Judge issued a search warrant authorizing law enforcement to place a global positioning system (GPS) tracking device on a Silver 2005 Cadillac CTS, and a Silver 2005 Chrysler Town and Country Van, both of which the Defendant had a reasonable expectation of privacy. The Nov. 30, 2018, GPS search warrant was based on an affidavit which was clearly lacking in sufficient indicia of probable cause. The information provided in the underlying affidavit was stale, vague, misleading and wholly insufficient to provide the necessary probable cause to issue the GPS search warrant. The GPS devices were installed and used to monitor the movement of the vehicles for approximately three weeks and thereafter led to the issuance of additional search warrants for the Defendant's residence in Dubuque, Iowa, a hotel room at a casino, the same vehicles that had the GPS units attached, a storage unit, and his person. This subsequent search warrant was issued on or

1

about December 28, 2018, by the same Dubuque County State Judge. The subsequent search of the Defendant's hotel room led to a seizure of methamphetamine and cocaine. The search of his residence led to the seizure of drug related items. The search of his storage unit led to two firearms, and a search of his vehicles led to drug related items. On Defendant's person, officers discovered a large amount of currency.

## ISSUE

**The affidavit on which the search warrant for the GPS tracking devices was issued was so clearly lacking in any indicia of probable cause so as to render official belief in its existence unreasonable because the information therein was stale, vague, misleading and based on the word of informants without credibility, and in exchange for leniency. Therefore, the Defendant's rights against unreasonable search and seizure and to due process of law as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution was violated, and all evidence obtained as a result of the initial GPS search warrant issued on November 28, 2018, is tainted and should be suppressed.**

## DEFENDANT'S ARGUMENT

In *United States v. Jones,* 132 S. Ct. 945, 949, 181 L. Ed. 2d 911 (2012), the United States Supreme Court held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'. Therefore, an individual is

2

protected by the Fourth Amendment from such intrusions by law enforcement. *Id.* at 953-54 and Justice Sotomayor's concurring opinion at 954. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, <u>and effects,</u> against unreasonable searches and seizures, shall not be violated, and <u>no warrants shall issue, but upon probable cause,</u> supported by Oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized." (Emphasis added). "When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only the information found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon,* 432 F.3d 824, 827 (8th Cir. 2005).

In the instant case, the single affidavit submitted in support of the search warrant application for the GPS tracking device on or about Nov. 28, 2018, was insufficient to provide the necessary probable cause for issuance of a search warrant. For example, Paragraph 4 of the affidavit submitted in support of the application for the GPS search warrant states that "During the end of 2017 or beginning of 2018," an investigator met with M.J.S. who told the investigator that an ex-girlfriend recently took a trip to Kansas City to get meth with the Defendant, who was a major methamphetamine supplier for the Dubuque area. The same person, M.J.S., subsequently talked to agents while incarcerated in jail on April 30, 2018, and again stated that Mr. Seys was "one of the biggest suppliers of methamphetamine in Dubuque that he knew of…" The individual goes on to say that "it would be normal for him to purchase 1/4 pound of ICE methamphetamine from Seys at a

3

time." (Paragraph 9 of the affidavit.) Yet this individual does not disclose, nor is he apparently asked, for specific dates and weights that these alleged transactions involved. Further, there is no information for the issuing judge to ascertain the credibility of this person through either his criminal history or past information.

As for the girlfriend of M.J.S., when investigators talked to her ("a short time after speaking to M.J.S."), she stated she made a trip with Seys to Kansas City, without disclosing any dates, and very generally stated that they went to a hotel to meet with a meth supplier. She does not remember the name of the hotel, does not give any description of the individual, and does not know the amount of meth involved.

In addition, in paragraph 10, the affiant states that there was a vehicle crash in Muscatine, Iowa, on May 26, 2018, where two backpacks were found "near the scene of the crash" and they contained 8.5 ounces of meth and "spiral notebooks that contained the name of Brandon Seys." There is no information about how these backpacks are tied to the crash incident, nor how the notebooks with Defendant's name in them had anything to do with meth distribution.

Further, the information contained in Paragraphs 11 - 16, involves an individual (D.G.F.) who, on Oct. 16, 2018, and while in jail, alleges that the 11 grams of ICE meth that he was caught with the day before came from Mr. Seys. Yet the text messages he showed investigators in relation to this alleged transaction were, in the words of the affiant, "vague." Also, again the affiant fails to disclose to the judge what the criminal history of D.G.F. is, or whether he is

4

getting any kind of benefit from his statements. Further, D.G.F. state that Mr. Seys owns several guns and gets multiple pounds of meth from an unknown subject in Kansas City, but does not disclose anything specific about this information such as dates, types of guns, locations where seen, etc.

In paragraph 17 of the affidavit submitted in support of the GPS search warrant application, it states that yet another individual, C.M., while in Dubuque County Jail, wanted to provide information on Mr. Seys. It goes on to state that he used to buy large amounts of meth from Seys, and that he brings in "5 - 10 kilos" of meth into the Dubuque area on a consistent basis. He also stated that Mr. Seys is in possesison of a .40 cal handgun and carries around large amounts of currency. Again, however, there are no dates, locations, or descriptions provided by this individual, nor is there any indication that he is reliable or trustworthy. It also does not include his criminal history or whether or not he is getting any benefit in return for providing information to law enforcement.

In paragraph 18, the affiant states that he spoke to "CI #12117" who alleges that he saw K.H. selling meth "this summer into early fall," and the her source was Seys. He also claims that he heard K.H. and Seys discussing pounds of meth getting transported into Dubuque, but does not disclose when this conversation occurred, or where, nor does he disclose specifics on K.H. selling meth in the Dubuque area. Further, the affiant does not disclose whether this C.I. had a relationship with K.H., or whether or not he had a criminal history or pending charges.

5

Case 2:19-cr-01004-CJW-MAR    Document 18-1    Filed 05/16/19    Page 5 of 12

Paragraphs 19 - 21, and 25 relate only to observations of Mr. Seys driving a Silver Cadillac and a Silver Town and Country Van, and that these vehicles were seen parked at Mr. Seys alleged residence on Boyer Street at various times. They also contain information about observations of Mr. Seys and his girlfriend at the Rhythm City Casino on two occasions.

Paragraph 22 relates an occasion where agents were reviewing surveillance footage from Rhythm City from Oct. 13, 2018, and it alleges a drug transaction occurred between Seys' girlfriend and an unidentified male inside the casino while the girlfriend was playing a slot machine. However, it also states that afterwards all three are seen getting into Mr. Seys' Cadillac and driving away, which makes little sense.

Paragraphs 23 and 24 set forth information that Mr. Seys has incurred a gambling loss of $22k at Rhythm City on one occasion, and "played over $12k worth of chips" at the Isle of Capri casino in Bettendorf, Iowa.

Finally paragraphs 26 and 27 relate interviews the affiant has conducted on two inmates at the Dubuque County Jail, on Nov. 6, 2018, and November 19, 2018. C.M. claims that Seys is staying at K.H.'s residence, that he had been there on multiple occasions, and that he gave Seys a Tech 9 handgun. He does not, however, give any dates, times or locations on the gun transaction or visits to K.H.'s house. Similarly, R.H. claims that Seys is the main supplier of meth in Dubuque, that he has seen Seys in possession of multiple pounds of meth, and has multiple suppliers. He does not disclose any dates, locations, or specific amounts.

The Eighth Circuit considered and rejected the sufficiency of a similarly vague affidavit in *United States v. Button,* 653 F.2d 319 (8th Cir. 1981). The Court focused on the statement that the informant had seen a large quantity of white powder that was represented to be Angel Dust which the informant had observed to have come from the residence, and it noted that "[n]o underlying circumstances are given, **nor** any date or time of day or **night."** *Id.* at 324 (emphasis added). The only specific date in the affidavit was that given by the police officer affiant that he had searched the trash on a given date. *Id.* The information from the first informant was received "over the past six months." *Id.*

The Court in *Button* at 325, also drew upon the decision in *Ashley v. State,* 241 N.E.2d 264, 269 (Ind., 1968), which said that "in dealing with a substance like marihuana [or other prohibited substances], which can be easily concealed and moved about, probable cause to believe that it was in a certain building on the third day of the month is not probable cause to believe that it will be in the same building **eight days later."** (Emphasis added). Ultimately, the Court in *Button, supra,* found that the affidavit and warrant did not survive Fourth Amendment scrutiny. *Id.* at 327.

In addition, the assertion in the affidavit by several individuals in the affidavit that Seys is the main supplier of meth in Dubuque is totally vague. There are absolutely no details provided to ascertain whether any of these individuals allegedly knew this from first-hand observation or whether it was simply a "prevaricating tale" based on nothing but rumor or speculation. See, *United States v.*

7

*Nelson,* 04-4651DWFJSM, 2005 WL 1355025 at 3 (D. Minn. 2005).

Numerous paragraphs of the affidavit submitted in support of the GPS search warrant contain information similar to that which was found to be insufficient to provide probable cause in the case of *State v. Wilbers,* 347 S.W.3d 552, 562 (Mo. App., W.D. 2011). In *Wilbers,* the search warrant affidavit stated:

> Within the past 48 hours (as of 3:00 PM July 1, 2008), I have had contact with a confidential informant that has been inside the residence of Curtis A. Wilbers, located at 11127 Deer Run Road, Jefferson City, Missouri. The CI reported to me that while inside the residence, he/she observed Wilbers in possession of four bags containing methamphetamine. The CI has known Wilbers for at least five years and reports seeing Wilbers in possession of methamphetamine hundreds of times.

*Wilbers,* at 555-56.

The above-quoted portion of the affidavit, which was found to be insufficient to provide probable cause in *Wilbers,* actually contained more detailed information than the affidavit in the instant case. It stated the number of bags of methamphetamine that Mr. Wilbers reportedly possessed. However, the Court of Appeals in *Wilbers* recognized that "a simple recitation of **when** the observation of illegal activity or contraband occurred is necessary". *Id* at 561 (emphasis added). "To require the inclusion within the affidavit of a specific time, or time frame, when the illegal activity or contraband was observed is not hyper-technical, but rather **fundamental**." *Id.* (citation omitted) (emphasis added). "Ratification of an

issuing court's finding of probable cause based upon an affidavit absent any mention as to **<u>when</u>** the informant made the observations would relegate trial and appellate court review in this area to a rubber stamp." *Id.* at 561 (emphasis added).

Although the Court in *Wilbers* applied the "good faith" exception and declined to apply the exclusionary rule, after the ruling of insufficient probable cause in *Wilbers,* Iowa Courts and law enforcement officers should be obliged to follow that decision when search warrant applications are submitted. Reliance on an "after-the-fact" or "after-the-search" so-called good faith exception should not be condoned after the *Wilbers* case. "Probable cause must exist when a warrant is issued, not merely at some earlier time." *Id.* at 560.

The Court in *Wilbers* distinguished cases in which the affidavit(s) included very detailed, specific information provided by the informant showing a personal knowledge of where the prohibited substance was kept. *Id.* at 560. Such was not the case in the GPS search warrant affidavit in Mr. Seys' case. This affidavit is totally vague and void of detail. The GPS search warrant should never have been issued due to the lack of probable cause. Further, the search warrant affidavit in this case is almost squarely on point with the affidavit in *Wilbers.* Therefore, the Dubuque issuing Court, in 2018, should have been aware that it was insufficient under the law pursuant to *Wilbers.* "[J]udges are presumed to know the law and to apply it in making their decisions." *United States v. Bain,* 586 F.3d 634, 638 (8th Cir. 2009). *Accord, State v. Amick,* 462 S.W.3d 413, 415 (Mo. banc 2015); *see also, Dycus v. Cross,* 869 S.W.2d 745, *751* (Mo.

9

bane 1994) (trial courts are assumed to know the law).

Therefore, the good faith exception should **not** apply. Law enforcement officers should also be held to this standard. These law enforcement officers knew that the affidavit submitted to obtain the GPS search warrant was so lacking in probable cause as to render reliance on it unreasonable. If there is no consequence for issuing search warrants on insufficient evidence, Courts have no incentive to stop doing so. If the good faith exception is applied every time the Courts ignore what they should know is wrong, then they will not stop.

The reason witnesses' prior criminal convictions may be exposed to the Court and jury when they testify is that prior criminal convictions logically and legally bear on the question of the witnesses' credibility. The credibility of the "cooperating citizens" is exactly what the Court must ascertain when evaluating an affidavit. Omitting the prior criminal history of a "cooperating citizen", which is easily available, is an intentional and calculated attempt to deprive the Court of essential information the Court needs in order to evaluate the credibility of the "cooperating citizen".

The informant's criminal history and the "compensation" or consideration" which law enforcement was providing to him or her bear directly on his or her credibility. One Court noted that "[n]ever has it been more true that a criminal charged with a serious crime understands that a fast and easy way out of trouble with the law is... to cut a deal at someone else's expense and to purchase leniency from the government...." *Northern Mariana Islands v. Bowie,* 243 F.3d 1109, 1123 (9th Cir. 2001). "The use of informants to investigate and prosecute persons engaged

in clandestine activity is fraught with peril." *United States v. Bernal-Obesco,* 989 F.2d 331, 333 (9th Cir. 1993). "Our judicial history is speckled with cases where informants falsely pointed the finger of guilt at suspects and defendants, creating the risk of sending innocent persons to prison." *Id.* The United States Supreme Court has stated, "The use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility." *On Lee v. United States,* 343 U.S. 747, 755, 72 S.Ct. 967, 962 L.Ed. 1270 (1952).

The inherent unreliability of compensated informants generally, their tendency to lie, and the conclusory nature of the information provided makes the veracity of the informants' information highly suspect.

Thus, the affidavit on which the GPS search warrant was issued was so clearly lacking in any indicia of probable cause so as to render official belief in its existence entirely unreasonable. All evidence obtained, including any subsequent search warrants and statements attributed to the Defendant, are fruit of that poisonous tree. It is all tainted and should be suppressed.

WHEREFORE, the Defendant prays that the Court grant him a suppression hearing, sustain his Motion to Quash Search Warrants and Suppress Evidence and Statements and for such further Orders as the Court deems just and proper under the circumstances.

/s/ Michael K. Lahammer_____
Michael K. Lahammer
ATT 4425
425 2nd St. SE Suite 1010
Cedar Rapids, Iowa 52401
Phone: 319-364-1140
Fax: 319-364-4442
ATTORNEY FOR DEFENDANT
Email: mike@lahammerlaw.com