# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>BRANDON JAMES SEYS,<br><br>        Defendant. | No. 19-CR-1004-CJW-MAR<br><br>**ORDER** |

_____

**TABLE OF CONTENTS**

I. INTRODUCTION ……………………………………………………………. 2

II. STANDARD OF REVIEW…………………………………………………… 2

III. FACTUAL BACKGROUND ………………………………………………… 6

IV. APPLICABLE LAW …………………………………………………………11

V. ANALYSIS……………………………………………………………………12

    A.    Fair and Just Reason………………………………………………………12

        1.    Violation of Defendant's Due Process Rights……………………12

        2.    Impeachment Evidence ……………………………………………14

    B.    Claim of Innocence, Timeliness of Withdrawal, and Prejudice …………16

        1.    Claim of Innocence…………………………………………………17

        2.    Timeliness of Withdrawal …………………………………………18

        3.    Prejudice to Government …………………………………………19

VI. CONCLUSION ………………………………………………………………20

## I. INTRODUCTION

This matter is before the Court on a Report and Recommendation ("R&R") of the Honorable Mark A. Roberts, United States Magistrate Judge. (Doc. 150). On May 26, 2020, defendant filed a motion to withdraw his guilty plea. (Doc. 131). On June 2, 2020, the government timely filed a resistance. (Doc. 133). On June 10, 2020, defendant timely filed a reply. (Doc. 137). On June 12, 2020, Judge Roberts held a hearing on defendant's motion. (Doc. 139). On July 6, 2020, the government filed a supplemental brief. (Doc. 145). On July 7, 2020, defendant also filed a supplemental brief. (Doc. 147). On July 27, 2020, Judge Roberts issued his R&R, recommending that the Court deny defendant's motion. (Doc. 150, at 34). On August 10, 2020, defendant timely filed his objections to the R&R. (Doc. 151).

For the following reasons, the Court **overrules** defendant's objections (Doc. 151), **adopts** Judge Roberts' R&R with minor legal modifications (Doc. 150), and **denies** defendant's motion to withdraw his guilty plea (Doc. 131).

## II. STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R under the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*See also* FED. R. CIV. P. 72(b) (stating identical requirements). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not

2

> preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, however, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen de novo review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620–19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94–1609, at 3, reprinted in 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect Section 636(b))). Thus, although de novo review generally entails review of an entire matter, in the context of Section 636 a district court's required de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1).

Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger de novo review."

3

*Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has concluded that general objections require "full de novo review" if the record is concise. *Id.* ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this Court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Ass'n v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate.").

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed).

The Court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and

4

recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3d 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this Court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the Court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153–54. Thus, although a clearly erroneous standard of review is deferential and the minimum standard

5

appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.

## III. FACTUAL BACKGROUND

After reviewing the record, the Court finds that Judge Roberts accurately and thoroughly summarized the relevant facts in his R&R. (Doc. 150, at 2–9). Further, neither party objects to the R&R's factual findings. Thus, the Court adopts and incorporates below the R&R's factual findings without modification. (*Id.*) (original footnotes omitted).

> This case involves an alleged conspiracy to distribute methamphetamine and cocaine in the Northern District of Iowa. The investigation included use of a surveillance camera to monitor a Dubuque, Iowa residence. The August 28, 2019 testimony of Investigator Kearney is the principal issue in this motion. Although the facts of this case have been detailed in several prior orders, the nature of this motion necessitates that certain facts be reiterated.
>
> On November 30, 2018, the DDTF commenced twenty-four-hour video surveillance using a Milestone surveillance camera on 740 Boyer Street, Dubuque, Iowa ("740 Boyer Street"), a home associated with Defendant. (Kearney Aug. 28, 2019 Hr'g Test. ("Kearney 2019 Hr'g Test.") at 23-24.) Although the City of Dubuque has a well-known wealth of cameras, the Milestone camera belonged to the State of Iowa. State Division of Narcotics Enforcement ("DNE") Agent Joshua Mulnix, who was also involved in the case, completed the request form for the camera. (Doc. 145-1.) The form provided, "Note IP video will be maintained for no more than 30 days unless specifically requested." (*Id.* at 2.) The form also stated that "[a]ny information gathered during the operation of this equipment will be used for criminal purposes only. All other information gathered that is non-criminal will be destroyed." (*Id.*) Agent Mulnix checked a box on the form that stated, "Records of surveillance will not be maintained by law enforcement personnel unless there is a clear criminal predicate (except that some records may be maintained for training purposes)." (*Id.*)
>
> This Milestone camera remained in place until mid-January 2019. (Kearney 2019 Hr'g Test. at 23.) Defendant was arrested on State charges on December 30, 2018 and has been in state or federal custody since then.

Investigator Kearney testified at the August 28, 2019 hearing on Defendant's Motion to Suppress Evidence, Motion to Quash Search Warrants and Suppress Evidence, Supplemental Motion to Suppress, and Motion to Dismiss ("the Pretrial Motions" or "Motion to Dismiss," as relevant). The following is a synopsis of his relevant testimony.

### A. *Investigator Kearney's August 28, 2019 Testimony*

Investigator Kearney testified that due to a shortage of city surveillance cameras, investigators in this case had to use the State's Milestone camera to conduct surveillance. (*Id.* at 24, 35.) This was the first time Investigator Kearney had used a surveillance camera running on the State's server and the camera did not save video the way Investigator Kearney thought it would. (*Id.* at 74.) City of Dubuque cameras automatically save footage for 30 days, which is how long Investigator Kearn[e]y assumed the state camera would save footage. (*Id.*) During the course of the surveillance of 740 Boyer Street, Investigator Kearney printed approximately six or seven screenshots of surveillance footage. (*Id.* at 78-79.) Investigator Kearney attempted to take screenshots of anything he found "significant." (*Id.* at 76.) Although Investigator Kearney was never certain of the "look-back" period for the Milestone camera, i.e., how long the video was saved for at least the short term, he knew it was at least a few days because he could come into work on a Monday and review video from the weekend. (*Id.* at 74.)

Investigator Kearney testified that sometime shortly after December 23, 2018, he learned that the State server was not saving all the surveillance footage from the Milestone camera and that if he had wanted the footage saved, he should have provided hard drives to the State prior to the camera installation. (*Id.* at 76-77, 82.) Officer Kearn[e]y never provided hard drives to the State because he thought it would not be possible to preserve footage that had already been taken. (*Id.* at 77.)

Investigator Kearney testified that he took no "affirmative steps to destroy or get rid of any evidence." (*Id.* at 82.) He further testified that he did not "intentionally get rid of any evidence" or "get rid of any evidence that [he] knew to be exculpatory for the purpose of avoiding it for use by the defendant or the defense." (*Id.* at 82-83.)

### B. *Events Subsequent to the August 28, 2019 Hearing*

On October 8, 2019, I filed a Report and Recommendation ("R. and R.") recommending the District Court deny all motions that were the subject of the August 28, 2019 hearing, including Defendant's Motion to Dismiss (Doc. 34), which was based on alleged due process violations from

7

law enforcement's failure to preserve footage from the Milestone camera. (Doc. 86.) Defendant filed objections to the R. and R. (Doc. 91.) On October 21, 2019, the Honorable C.J. Williams accepted the R. and R. with minor factual modifications. (Doc. 98.) On October 22, 2019, Defendant appeared before me and pleaded guilty to Counts 1 and 3 of the Superseding Indictment. (Doc. 102.) On the same day, Judge Williams accepted my R. and R. recommending he accept Defendant's guilty plea. (Doc. 103, 106.)

On January 27, 2020, Defendant's then-attorney served a subpoena on Special Agent Craig Mackaman. (Doc. 131-1 at 5; Doc. 132-1 (Def. Ex. N).) The subpoena requested "disclosure and presentation of copies of any video or other media that showed the residence at 740 Boyer Street . . . within the time frames of November 30, 2018 to January 15, 2019 that were in the possession of the Iowa Department of Public Safety." (Doc. 132-1 at 1.) In response, Special Agent Mackaman searched the Department of Public Safety's video recording server archives and located video recordings that were responsive to the subpoena. (*Id.*) Special Agent Mackaman stated that finding this video was "somewhat of an anomaly due to the fact that the video camera retention time for most recordings is set for 45 to 90 days without prior arrangements being made for a longer retention period which generally would be up to 365 days at the longest." (*Id.*) He further explained:

> The fact that there were files related to this request still retained on the server was merely a malfunction within the video management software and or hardware components of the server which failed to completely erase video files that were beyond the date of the designated retention period set for that camera. The fact that these files are not complete (24 hours) for a certain day or date range shows that some files were deleted while others were not, again demonstrating a software or hardware failure. The video management software is set to archive video at 2 hour increments, thus most of the files which remained were segmented into durations of 2 hours in length.

(*Id.* at 2.) Special Agent Mackaman sent 72 two-hour video clips from 18 different days of video surveillance to Defendant's counsel in response to the subpoena. (*Id.*) Only one two-hour video clip was from a day prior to Defendant's arrest. (*Id.*)

8

Sometime on or after February 7, 2020, Investigator Kearney filed an undated Supplemental Report in Defendant's case. (Doc. 132-2.) In relevant part, the report stated:

> On Monday February 3rd 2020, I did speak to Mackman [sic]. . . . Mackman said that he received a subpoena on Friday asking for any Milestone Video related to the Brandon Seys case.
> Mackman stated that he did look on the state server 'Archive Folder' and found small clips of the Milestone Video starting on believed was December 30th, 2018. Mackman stated that sometimes the server will save small clips of video recordings on its own. Mackman also said that the clips are scattered over a couple week time period.
> I did tell Mackman that I asked DCI Agent Witt back in May of 2019 if there were [sic] any Boyer Street video on the server and she stated that she didn't see any. Mackman said that the clips were only found in the archive folder.
> . . .
> On February 7th, 2020, I did speak to AUSA Emily Nydle and informed her that small clips of Milestone video from the Boyer Street Camera was located in the state archive folder. I did inform her that Mackman would be sending her a copy of the video.

(*Id.*)

On April 15, 2020, I granted Attorney Lahammer's Motion to Withdraw as Defense Counsel. (Doc. 123.) Attorney John Bishop was appointed on April 16, 2020. (Doc. 124.) On May 26, 2020, Defendant filed the instant motion. (Doc. 131.)

### C. *Investigator Kearney's June 12, 2020 Hearing Testimony*

On June 12, 2020, Investigator Kearney testified to the following relevant facts. The investigation of Defendant was the first time he was involved with a camera that was run on the state server. (Doc. 143, Dan Kearney June 12, 2020 Hr'g Test. ("Kearney 2020 Hr'g Test") at 48.) He did not remember whether he or Agent Mulnix requested the camera from the State or remember reading anything on the request form saying video would be saved for 30 days. (*Id.* at 58-59.) At the time the camera was requested, both Investigator Kearney and Agent Mulnix assumed that the State recording system was similar to the Dubuque recording system. (*Id.* at 60, 63.) However, he learned from Agent Mulnix in December 2018

9

that if they had wanted the State to preserve the video from the Milestone camera, they would have to provide hard drives prior to installation to the State. (*Id.* at 63-64, 72-73.) This surprised Investigator Kearney, but he had no reason to doubt Agent Mulnix because Agent Mulnix had long-term experience investigating drug cases for the State. (*Id.* at 71.) Investigator Kearney later learned that Agent Mulnix "provided [him] with potentially incorrect information" and that he could have provided the State with hard drives "either while the recording [was] going on or afterwards during a short timeframe." (*Id.* at 49.)

Investigator Kearney did not ask anyone on behalf the State to provide copies of videos from the Milestone camera in November or December 2018 because the DDTF had not provided the State with hard drives prior to installation of the camera. Investigator Kearney felt it would be futile to make such a request. (*Id.* at 49, 67-68.) In May 2019, apparently at the request of AUSA Emily Nydle, he did ask Special Agent Holly Witt if there was any video remaining from the camera. (*Id.* at 49, 67-68; Doc. 140.) Investigator Kearn[e]y did not expect there to be any video because he understood that video was not preserved if hard drives were not provided at the beginning of the recording process. (Kearney 2020 Hr'g Test. at 71-72.) Investigator Kearney never received any video from Special Agent Witt in response to his query. (*Id.* at 49-50.) Investigator Kearney was surprised to learn in January 2020 that video, in fact, did exist from the Milestone camera. (*Id.* at 50.) Upon learning that video of the surveillance of 740 Boyer Street existed, Investigator Kearney wrote the supplemental report discussed above. (*Id.*) Investigator Kearney explained that Special Agent Witt first showed him the image of 740 Boyer Street to confirm that she had the correct video and that he had not spoken to Special Agent Mackaman until after learning about the video clips. (*Id.*)

Investigator Kearney made representations in his search warrant application stating that video from the Milestone camera and physical surveillance showed certain things occurred at 740 Boyer Street. (*Id.* at 53-55.) He stated that if this case had gone to trial, he would have testified that certain persons known to be involved with methamphetamine in the Dubuque area frequented 740 Boyer Street and that Defendant would frequently have black bags and/or briefcases in his possession when he left the house, which was something that he had observed on the Milestone video. (*Id.* at 55-58.) He admitted that without the video, Defendant would not be able to dispute that the video showed this. (*Id.* at 56-58.) However, Defendant also had his own surveillance system that was seized by law

10

enforcement. (*Id.* at 70.) Although Defendant said he would provide a password for that system, he later declined to do so. (*Id.*)

Investigator Kearney testified that he does not bear Defendant any ill will and did not intentionally destroy evidence that he believed could be useful to the defense. (*Id.* at 51.) To Investigator Kearney's knowledge, none of the video that was lost included any inculpatory or exculpatory information. (*Id.* at 51-52.) The only relevant activity that appeared on the video was captured in screenshots that he took when he reviewed the video during the investigation. (*Id.* at 52.) Investigator Kearney had the opportunity to review his August 2019 testimony and stated that at that time, he testified to the best of his knowledge, although he has learned since that time that had he made a timely request to the State, the entire recording from the Milestone camera could have potentially been saved. (*Id.* at 52-53.)

### D. *Special Agent Holly Witt's And Special Agent Craig Mackaman's June 12, 2020 Hearing Testimony*

Special Agents Holly Witt and Craig Mackaman both testified that had anyone asked if video from State cameras could have been saved during the 30-day recording period, they could have saved the entire recording. (Witt Hr'g Test. at 24; Mackaman Hr'g Test. at 38.) Special Agents Witt and Mackaman also testified that although the request form stated that video footage was saved for 30 days, it was actually saved for a minimum of 45 days to give law enforcement a "grace period" within which to ask for recordings. (Witt Hr'g Test. at 12-13; Mackaman Hr'g Test. at 42-43.) Special Agents Witt's and Mackaman's testimony will be further discussed below.

### IV. APPLICABLE LAW

A defendant has no absolute right to withdraw a guilty plea. *See United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir. 1993). A district court may allow a defendant to withdraw his guilty plea if he shows a "fair and just reason," FED. R. CRIM. P. 11(d)(2)(B), but a guilty plea should not "be set aside lightly." *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997). "'The defendant bears the burden of showing fair and just grounds for withdrawal.'" *United States v. Rollins*, 552 F.3d 739, 741 (8th Cir. 2009) (citation omitted). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, 'the occasion for

11

setting aside a guilty plea should seldom arise.'" *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992) (quoting *United States v. Rawlins*, 440 F.2d 1043, 1046 (8th Cir. 1971)). "Even if such a fair and just reason exists, before granting the motion a court must consider 'whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion.'" *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006) (quoting *Nichols*, 986 F.2d at 1201). "Where the court sees no fair and just reason to permit withdrawal, however, these additional matters need not be considered." *Id.*

## V. ANALYSIS

### A. Fair and Just Reason

Defendant seeks to withdraw his guilty plea and reopen the record in light of newly discovered evidence that he alleges casts doubt on the veracity of Investigator Kearney's prior testimony about the Milestone camera footage. (Docs. 131, at 4; 151, at 1–2). Defendant argues that Investigator Kearney intentionally failed to preserve the Milestone footage and subsequently testified falsely on two occasions to conceal his failure. (Doc. 151, at 1–2). Defendant argues these circumstances constitute a fair and just reason for withdrawing his guilty plea for two reasons. First, Investigator Kearney's actions may establish a due process violation which may necessitate dismissal of defendant's case. (*Id.*, at 1). Second, even if dismissal was not warranted, defendant would have the opportunity to impeach Investigator Kearney to such an extent that there would be "a reasonable probability that [defendant] would not be found guilty at trial." (*Id.*).

#### 1. Violation of Defendant's Due Process Rights

Defendant's first contention—that Investigator Kearney's actions amount to a violation of defendant's due process rights as described in *Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny—is unpersuasive. Defendant initially argued this point in his

12

June 4, 2019, Motion to Dismiss. (Doc. 34). This Court has already addressed and disposed of much of this argument in its October 21, 2019 Order. (Doc. 98, at 24–26). In denying defendant's prior motion, this Court found that defendant failed to show that the Milestone footage was exculpatory or that it was unavailable by other reasonable means. *Id.* This Court conceded that the footage may be material but found that its evidentiary value was likely limited to the narrow purpose of undermining the testimony of law enforcement officers. *Id.* at 25. This assessment is bolstered by defendant's second contention in the instant motion—that the opportunity to impeach Investigator Kearney may shift the outcome of a trial. Further, defendant had access to personal surveillance footage which could serve a similar purpose as the Milestone footage. *Id.* Thus, "the Milestone Camera footage is not material, exculpatory evidence and did not trigger the government's duty to preserve." *Id.*

The only way the outcome of defendant's due process allegation could differ now is if the new information about Investigator Kearney's failure to preserve the Milestone footage demonstrates that he acted in bad faith. Assuming that the evidence in question is potentially useful, "a criminal defendant must prove bad faith on the part of the police to make out a due process violation." *United State v. Houston,* 548 F.3d 1151, 1155 (8th Cir. 2008) (citing *Arizona v. Youngblood,* 488 U.S. 51, 57 (1988)). Indeed, defendant hangs his hat on the hope that this Court accepts defendant's assertions of Investigator Kearney's perjury and dishonesty as irrefutable. To be sure, the new evidence arguably shows that Investigator Kearney was less diligent than previously believed. This still falls far short of the type of behavior which could plausibly be considered to be bad faith. There is no evidence—other than defendant's supposition— that Investigator Kearney intentionally destroyed files, made any "conscious effort[s] to suppress exculpatory evidence," or otherwise engaged in a "calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its

13

progeny." *California v. Trombetta*, 467 U.S. 479, 488 (1984). Defendant's accusations are mere characterizations and enjoy little support in the record. Defendant relies entirely on inferences drawn from an overly literal parsing of Investigator Kearney's testimony and assumptions about what law enforcement agents from different but related agencies should know throughout the course of a prolonged investigation. These inferences are unreasonable and, without more, do not prove bad faith on the part of the government. As a result, this Court declines to endorse them.

Nevertheless, defendant need not definitively establish a due process claim in order to justify the withdrawal of his plea. A fair and just cause may take many forms, including the discovery of new evidence. *See, e.g.*, *United States v. Garcia*, 401 F.3d 1008, 1011 (9th Cir. 2005) (finding that new evidence must be related to defendant's case but need not exonerate defendant to qualify as a fair and just reason); *United States v. Baptista*, 738 Fed. App'x 384, 386 (9th Cir. 2018) (holding that when considering new evidence, "the district court should ask whether the new evidence could have motivated the defendant to plead not guilty."). The new evidence raised by defendant does nothing to alter this Court's prior conclusion that the officer's "failure to preserve the [Milestone] footage was at best negligent and does not constitute bad faith." (Doc. 98, at 26) (citing *Houston,* 548 F.3d at 1155). Additionally, defendant has made no showing that he would have pled otherwise had he known of this new evidence at the time of pleading. A due process violation has not occurred here and the new evidence itself does not suffice as a fair and just reason to withdraw the defendant's previous guilty plea.

### 2. *Impeachment Evidence*

Defendant's second contention—that the opportunity to impeach Investigator Kearney may result in a more favorable outcome at trial—does not constitute a fair and just reason for withdrawal of plea either. A defendant who uncovers evidence relating to his factual or legal innocence which was unavailable prior to the defendant's guilty

plea may be allowed to withdraw his plea. *See, e.g.*, *United States v. Groll,* 992 F.2d 755, 758 (7th Cir. 1993) ("[B]eing legally innocent of the crime is a fair and just reason to withdraw a guilty plea."); *United States v. Garcia*, 401 F.3d 1008, 1011 (9th Cir. 2005) (finding that the defendant's discovery of a new witness raised new questions about his involvement in the illegal activity and therefore constituted a fair and just reason to withdraw his guilty plea). Serious allegations of that sort call for a more probing analysis. *See Morrison,* 967 F.2d at 268. New information that merely causes a defendant to reevaluate the likelihood of success at trial, however, does not entitle a defendant to withdraw his plea:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time.

*Brady*, 397 U.S. at 756–57.

A defendant is not entitled to withdraw his plea simply because he has a change of heart about the strength or weakness of the case against him. *Nichols,* 986 F.2d at 1203. The facts which led the Eighth Circuit Court of Appeals to reach this conclusion in *United States v. Nichols* are remarkably similar to the facts of the instant case. There, the defendant pled guilty to federal drug distribution charges. *Id.* at 1201. Subsequently, the defendant learned that the government's investigation against him had been closed prior to his indictment. *Id.* at 1202. The defendant averred on appeal that his plea was induced primarily by his attorney's representations to him that the government's case was strong and that had he known that the government had closed his investigative file he never would have pled guilty. *Id.* The Eighth Circuit Court of Appeals denied the defendant's motion to withdraw his plea, stating that the defendant fully understood the

15

nature of the charges against him when he pled guilty and that the newly discovered evidence at best constituted "a source of impeachment material that could be used against the . . . government agent at trial." *Id.* at 1203.

As in *Nichols*, so too here defendant seeks to withdraw his plea so that he may attempt to litigate a case that initially appeared to be stronger than it was. Unlike *Nichols*, however, defendant in the instant case is explicit in characterizing his motivation as a recalculation of his odds of success at trial. (Doc. 151, at 1.) This motivation does not constitute a fair and just reason for withdrawing a guilty plea. *See Nichols*, 986 F.2d at 1203 (affirming trial court's denial of motion to withdraw plea where new evidence was only used for impeachment of witness); *see also Morrison,* 967 F.2d at 269–70 (affirming trial court's denial of motion to withdraw plea where new evidence amounted to weak impeachment of victim's testimony). Thus, defendant's motion to withdraw his guilty plea must fail.

### B. *Claim of Innocence, Timeliness of Withdrawal, and Prejudice*

In addition to determining whether defendant has established a fair and just reason to withdraw his plea, a court should consider several other factors before allowing a plea to be withdrawn. *See United States v. Boone*, 869 F.2d 1089, 1091–92 (8th Cir. 1989). These factors are: (1) whether the defendant asserts their legal innocence; (2) the amount of time elapsed between the plea and the motion to withdraw; and (3) the extent to which the government will be prejudiced by the withdrawn plea. *Id.* There is no need to analyze these additional factors absent an initial showing of a fair and just reason for withdrawal. *United State v. Abdullah*, 947 F.2d 306, 311 (8th Cir. 1991). A "District Court could not have abused its discretion in denying" a motion to withdraw when a defendant fails to pass "the most critical test:" demonstrating that a fair and just reason to withdraw exists. *United States v. Jagim*, 978 F.2d 1032, 1037 (8th Cir. 1992). Here, however, the Court believes a comprehensive analysis of the *Boone* factors is warranted.

16

### *1. Claim of Innocence*

Whether a defendant asserts his innocence as a basis for withdrawing his guilty plea is an independent factor to be considered by a court when determining whether to allow a withdrawal. *Boone*, 869 F.2d at 1091. As with the other factors, however, such an assertion must be grounded in a basis of factual evidence or other support. *United States v. Ludwig*, 972 F.2d 948, 951 (8th Cir. 1992). "'[M]ere assertion of innocence, absent a substantial supporting record[,] will not be sufficient to overturn a denial of a motion to withdraw.'" *Id.* (quoting *United States v. Clark*, 931 F.2d 292, 295 (5th Cir. 1991)). This is especially true when the defendant knowingly and voluntarily admitted guilt during his arraignment or plea taking. *Morrison*, 967 F.2d at 268. ("When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, 'the occasion for setting aside a guilty plea should seldom arise.'") (quoting *Rawlins*, 440 F.2d at 1046).

Defendant's assertion of innocence in this case contributes very little support to his motion to withdraw. On October 22, 2019, defendant knowingly and voluntarily admitted to the facts of the crimes alleged at his plea hearing. (Doc. 103). After fully apprising defendant of his rights, the nature of the crimes alleged, and the consequences of defendant's plea, Judge Roberts recommended that this Court accept defendant's guilty plea—a recommendation to which defendant did not object. (*Id.*). The new evidence which has arisen since entering his plea does not support an argument for the factual or legal innocence of defendant. To be sure, this new evidence provides a stronger foundation from which to argue the merits of the prior Motion to Dismiss or certain aspects of the government's case. Such a purpose does not comport with a meaningful assertion of innocence, however, and cannot serve as the basis for withdrawing a plea. "[A] belated desire to appeal [or reargue] a suppression ruling is not a fair and just reason warranting the withdrawal of a plea of guilty." *United States v. McHenry*, 849 F.3d 699,

17

706 (8th Cir. 2017) (second alteration in original). Thus, the Court finds that defendant's bare assertion of innocence does not justify a withdrawal of his plea.

### 2. *Timeliness of Withdrawal*

The amount of time elapsed between a defendant's plea and the motion to withdraw is an independent factor to be considered by a court when determining whether to allow a withdrawal. *Boone*, 869 F.2d at 1091. Here, more than seven months passed before defendant moved to withdraw his plea. (Doc. 150, at 33). Such a prolonged period of time between a plea and the subsequent motion to withdraw weighs against granting that motion. *See id.* (finding a period of two months between plea and motion to withdraw did not support withdrawal of the plea.); *see also United States v. Montag*, 28 Fed. App'x 589, 592 (8th Cir. 2002) (finding a period of five months between plea and motion to withdraw did not support withdrawal of plea); *United States v. Vallery*, 108 F.3d 155, 158 (8th Cir. 1997) (holding that passage of over four months between plea and motion to withdraw supported district court's denial of motion).

Defendant argues that the traditional *Boone* analysis mischaracterizes the actual amount of time that elapsed here. (Doc. 137, at 4). Because defendant was not aware of the additional evidence which serves as a basis for his motion to withdraw until mid–February 2020, the date of defendant's plea is not a fair date to start the clock, so to speak. (*Id.*). Defendant's timeline is further complicated by his change of counsel in mid-April, by restrictions on access to counsel necessitated by the COVID-19 pandemic, and by the extensive nature of the discovery materials to be reviewed by defendant's new counsel. (*Id.* at 4–5). These are fair arguments. Nevertheless, three months elapsed from the discovery of the additional video recordings to the filing of the instant motion. Further, the nature of this new evidence and its utility to defendant—discussed above—do not support a finding that the intervening months are justified by anything other than defendant's "belated misgivings about [the] wisdom" of his plea. *United States v. Green*.

18

521 F.3d 929, 931 (8th Cir. 2008) (quoting *United States v. Fitzhugh*, 78 F.3d 1326, 1328 (8th Cir. 1996)). Thus, the timeliness factor of the *Boone* analysis does not support granting defendant's motion.

### 3. *Prejudice to Government*

The final *Boone* factor is whether the government will be prejudiced by a withdrawal of defendant's plea of guilty. Defendant asserts that no meaningful prejudice to the government would result from allowing defendant to withdraw his plea. (Doc. 137, at 5). The government contends that since "witnesses would need to be served and jurors notified again," the government would be "greatly prejudiced if defendant were allowed to withdraw his plea." (Doc. 133, at 13–14).

To the extent that serving witnesses and empaneling juries is prejudicial to the government, it is a measure of prejudice which this Court is willing to accept. Admittedly, there is some authority indicating that this burden is sufficient to constitute "some prejudice." (Doc. 150, at 34) (citing *United State v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999)). To require the government to prepare for a trial after initially believing a trial had been avoided, however, does not amount to the type of prejudice which should preclude a defendant from withdrawing his plea if the remaining factors would otherwise support a withdrawal. "[S]ome degree of prejudice to the government is, of course, inevitable from a plea withdrawal[.]" *United States v. Miell*, 711 F. Supp. 2d 967, 991 (N.D. Iowa 2010). The degree of prejudice required to overcome a defendant's interest in withdrawing his plea must be significantly higher than that alleged by the government here. *See id.* (finding prejudice to government is significant where passage of time causes witness memories to fade); *United States v. Dolson*, No. CRIM.02-075(3)ADM/RL, 2003 WL 1610783 at *1 (D. Minn. Mar. 12, 2003) (finding significant prejudice where key prosecution witness died between plea and motion to withdraw); *United States v.*

19

*Morrison*, 770 F. Supp. 526, 531 (N.D. Iowa 1991) (finding prejudice where government's actual ability to prepare for trial is impaired by passage of time).

Here, the government has failed to demonstrate any prejudice much beyond that which it would normally face in anticipation of trial. Thus, the Court disagrees with Judge Roberts' R&R on this point and finds that the government would not be significantly prejudiced by allowing defendant to withdraw his plea. This factor does not, however, outweigh the defendant's failure to prevail on the other *Boone* factors.

## VI. CONCLUSION

For these reasons, the Court concludes, as did Judge Roberts, that defendant has not shown a fair and just reason to withdraw his guilty plea. Thus, this Court **overrules** defendant's objections (Doc. 151), **adopts** Judge Roberts' R&R with minor legal modification (Doc. 150), and **denies** defendant's motion to withdraw his guilty plea (Doc. 131).

**IT IS SO ORDERED** this 3rd day of September, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa